**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
WALTER F. DOWNEY,              )
                               )
                Plaintiff,     )    CIVIL ACTION
                               )
v.                             )    No.  04-1359-MLB
                               )
DEERE & COMPANY,               )
                               )
                Defendant.     )
                               )
```

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion for summary judgment. (Doc. 13.) The motion has been fully briefed and is ripe for decision. (Docs. 13, 56, 57.) Defendant's motion is GRANTED in part, and DENIED in part, for reasons set forth herein.

**I.   SUMMARY JUDGMENT STANDARD: FRCP 56**

Federal Rule of Civil Procedure 56 directs the entry of summary judgment in favor of a party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). In determining whether a genuine issue of material fact exists, the court "view[s] the evidence in a light most favorable to the non-moving party." Qwest Corp. v. City of Santa Fe, N.M., 380 F.3d 1258, 1265 (10th Cir. 2004) (quotation omitted). When confronted with a fully briefed motion for summary judgment, the court must

ultimately determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff owns a John Deere Model 7810 tractor manufactured by defendant.  Plaintiff purchased the tractor in December of 1999.  Some two years later, in December of 2001, he was operating the tractor to load round bales of hay onto a truck.  At some point, he placed the tractor in "Park" and exited the cab of the machine to check his load.[1]  While dismounting, plaintiff claims the tractor slipped out of "Park" and into a forward gear, throwing him to the ground and causing him serious injuries.  (Docs. 1 exh. 1; 13 at 1; 14 at 2.)

Following the accident, plaintiff contacted the dealership from which be originally bought the tractor and asked the dealer to investigate the cause of the accident.  (Doc. 56 exh. 5 at 1.)  The

---

[1] Neither party has pointed to any evidence which establishes that plaintiff placed the tractor in "Park" prior to exiting the cab. In his state court petition, plaintiff merely alleged that, "On exiting the cab of the tractor, the tractor suddenly slipped into gear, throwing Mr. Downey to the ground." (Doc. 1 exh. 1 at 2 ¶ 7.) This leaves some doubt as to whether plaintiff placed the tractor in "Park," "Neutral," or some other configuration. Nonetheless, the parties and their experts all focus their commentary and analysis around the issue of whether the tractor could slip out of "Park" and into a forward gear. (See, e.g., Doc. 13 at 1.) Accordingly, the court gives plaintiff the benefit of the doubt and assumes that plaintiff's theory relies on evidence (probably his own testimony) that he placed the tractor in "Park" prior to dismounting.

dealer's repair personnel consulted with defendant's technicians, but after examining the machine in late December of 2001 and early January of 2002, claimed to have found no evidence of any deficiency that could have led to the accident.  Id. exh. 4 at CW33.  The parties do not address whether plaintiff regained possession of the tractor after this initial inspection; however, a review of the repair notes suggests that is what happened.  In particular, one note states that after this initial, unfruitful inspection, plaintiff reported another instance where the tractor jumped out of "Park" and lurched forward, after which the dealership reinspected the machine.  Id.  As a result of this second inspection, the dealer's repairman apparently changed his conclusion, finding instead that the incident may have occurred because a shift linkage was out of adjustment.[2]  Id. exh. 4 at CW32.

Consequently, plaintiff brought the present products liability action in Kansas state court, alleging that defendant and the local tractor dealer from whom the machine was purchased were liable based on a defect in the machine.  The case proceeded toward trial in the state court, and was scheduled for a jury trial to start on January

---

[2] Throughout the course of these inspections, the dealer's technicians apparently disassembled and removed parts, made adjustments to the tractor's shift linkages and related components, and then reassembled them into working order. (See Doc. 56 exhs. 3, 4.)  Plaintiff charges defendant with spoliation of evidence that could have supported plaintiff's claim that the tractor was defective. Id. At 11-13.  Consequently, plaintiff argues, he should be relieved of the ordinary burden of having to prove a specific defect with the tractor in order to recover under his theory of strict products liability.  However, the court notes that the dealer and defendant undertook these inspections and repairs at plaintiff's behest.  Had plaintiff wanted to preserve evidence, he had the opportunity to do so.  Since plaintiff decided to forego that opportunity in favor of having the dealer and defendant attempt corrective action on the machine, the court finds no reason to hold defendant responsible for any spoliation of evidence.

-3-

11, 2005. On November 10, 2004, the state court dismissed the local tractor dealer from the action, creating for the first time complete diversity of citizenship. Pursuant to 28 U.S.C. sections 1441 and 1446(b), defendant removed the case to this court on November 17, 2004. (Docs. 1 exh. 1; 51 at 2-4; 54 at 4.)

Thereafter, on February 4, 2005, defendant filed the present motion for summary judgment. Defendant claims that plaintiff has failed to identify a specific defect in the tractor, which is a required element of a strict products liability claim under Kansas law. (Doc. 14 at 7-8.) Plaintiff responded that he has been prejudiced by this "11th hour" removal to federal court, where the standards for admissibility of expert testimony are different from state court. (Doc. 51 at 3.) He asked alternatively for either a dismissal without prejudice under Federal Rule of Civil Procedure 41(a), or for a stay pending additional discovery pursuant to Rule 56(f). The court denied plaintiff's requests in a prior order (Doc. 55) and directed plaintiff to respond to defendant's motion for summary judgment. Briefing on that motion is now complete.

### III.  ANALYSIS

As an initial matter, plaintiff claims that defendant's motion for summary judgment is untimely. (Doc. 56 at 8.) He bases this assertion on Judge Bostwick's ruling that the court is obliged to respect state court orders entered prior to removal. (Doc. 54 at 5.) Based on that ruling, plaintiff seeks to enforce the state court's scheduling order, which established a deadline of November 17, 2004 for dispositive motions. (Doc. 56 at 8.) Thus, plaintiff argues, defendant's motion is filed out of time and should be summarily denied

-4-

on that basis. Defendant counters that it was prepared to file a motion for summary judgment in state court; however, on November 10, 2004, just one week prior to the dispositive motions deadline, the state court dismissed the tractor dealer from the case, thereby for the first time creating diversity of citizenship. (Docs. 53 at 4; 57 at 7-8.) Rather than file the summary judgment motion and risk that such an action could be construed as a waiver of its newly created right to remove the case to federal court, defendant removed the case to this court. The notice of removal was filed on November 17, 2004, prior to the dispositive motions deadline. (Doc. 1.) Thereafter, on February 4, 2005, defendant filed the present motion for summary judgment. (Doc. 13.)

Based on this sequence of events, defendant argues that its motion is timely. The court agrees. As Judge Bostwick noted in his order, the relevant statute is 28 U.S.C. § 1450, which states in relevant part, "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." As the statute explains, the district court has authority to dissolve or modify orders entered by the state court. Pursuant to that authority, the court finds that defendant's actions were appropriate. Given the belated dismissal of the dealer, and the short time from that event until the dispositive motions deadline passed, defendant timely removed the case to federal court. Thereafter, as soon as defendant's attorneys were admitted pro hac vice (Doc. 12), defendant filed its motion for summary judgment. Defendant has acted promptly under all the circumstances, and its motion will be considered on the merits.

Plaintiff appears to proceed under a theory of strict products liability, although neither his pleadings nor the pretrial conference order entered in state court expressly state as much. (Doc. 1 exhs. 1, 3.) "A federal court sitting in diversity must apply state law as propounded by the forum's highest court." Royal Macabees Life Ins. Co. v. Choren, 393 F.3d 1175, 1180 (10th Cir. 2005.) There appears to be no dispute that this case is governed by Kansas law.

In order to recover under a theory of strict products liability in Kansas, plaintiff must prove three things: "(1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left the defendant's control." Jenkins v. Amchem Products, Inc., 256 Kan. 602, 630, 886 P.2d 869, 886 (1994) (quoting Mays v. Ciba-Geigy Corp., 233 Kan. 38, 54, 661 P.2d 348 (1983)). These elements apply, regardless of whether plaintiff claims a manufacturing defect, design defect, or warning defect. See id.; see also Delaney v. Deere and Co., 268 Kan. 769, 774, 999 P.2d 930, 936 (2000).

Here, plaintiff has been careful not to specify whether he is claiming a design defect or a manufacturing defect. Neither his complaint, nor the state court's pretrial conference order shed any light on that subject. (Doc. 1 exhs. 1, 3.) Defendant criticizes plaintiff for having failed to specify the defect theory under which he proceeds, but that criticism is too late in coming. (Doc. 57 at 5.) Defendant should have clarified this matter long ago in the state proceedings, and certainly before it agreed to the pretrial conference order that was entered in state court. Id. at 6 (noting that

defendant agreed to the pretrial order). At this stage of case, the court concludes that the only appropriate course is to assume plaintiff may be proceeding under either theory, and address them both.

    A.  Design Defect

In addition to the basic elements of a strict products liability claim, a plaintiff proceeding under a theory of design defect must also identify the specific deficiency that caused or contributed to his injuries. <u>Jenkins</u>, 256 Kan. at 634, 886 P.2d at 888-89. Plaintiff fails to meet this requirement. He addresses this issue as follows: "Dr. Wells, an expert in product failure analysis, testified that <u>the defect in the tractor was that it jumped out of park and moved</u>. Obviously, that is a specific defect in the tractor . . . ."[3] (Doc. 56 at 10 (emphasis added).) On the contrary, the tractor's alleged movement was a <u>result</u> of a specific defect and, consequently, amounts to circumstantial evidence that a defect existed. However, the tractor's movement was not itself a defect.

By way of example, plaintiff might have obtained evidence to formulate a claim that some specific part of the tractor's shifting apparatus was designed in such a way that it was too small, too large, or too weak to perform its job. Plaintiff's expert could have explained such a deficiency by pointing out how the deficient part

---

[3] Following a <u>Daubert</u> hearing, the court granted defendant's motion to exclude plaintiff's expert, Ron Wells. Nevertheless, that decision has no bearing on defendant's motion for summary judgment. Wells conceded at the hearing that he could not identify a specific design defect. Thus, even if the court had considered his opinions in deciding this motion, they are insufficient as a matter of law to meet plaintiff's burden of establishing a prima facie case of design defect.

failed to perform its intended function, thereby allowing his tractor to come out of "Park" and move into a forward gear. Likewise, plaintiff's expert might have opined that defendant's design was deficient for having failed to include some particular additional safety mechanism that would have prevented the accident that occurred in this case. However, in order to do so, he would need to explain the process by which the failure occurred in this case, and how that process might be prevented with changes to the mechanism in question.

These examples are non-exhaustive, and necessarily vague since the court knows little about the tractor at issue here and what caused it to "jump out of 'Park'" if, in fact, that is what happened. Nonetheless, the Kansas Supreme Court has concluded public policy considerations demand that a plaintiff identify the specific defect that caused his injury in order to recover under a design defect theory:

> "The public policy considerations underlying the doctrine of strict liability are that the manufacturer can anticipate and guard against the recurrence of hazards, that the cost of injury, which may be overwhelming to an injured individual, can be distributed by the manufacturer among the consuming public, and that the marketing of defective products should be discouraged."
> Imposing liability for a product without identifying what aspect of that product is defective does not further these public policy considerations.

Jenkins, 256 Kan. at 634, 886 P.2d at 889 (quoting Savina v. Sterling Drug, Inc., 247 Kan. 105, 114, 795 P.2d 915, 923 (1990)).

Plaintiff claims that he has been prejudiced by defendant's "alterations" to the tractor in that his expert cannot now examine the tractor in the condition it was in at the time of his injuries. (Doc.

-8-

56 at 11.)  The court rejects that contention to the extent that plaintiff asserts a claim for defective design because, by definition, a design defect would be present in all tractors manufactured according to that design.  Plaintiff makes no claim that his machine was a one-of-a-kind model.  Hence, plaintiff's expert could have examined any other John Deere Model 7810 with the same shifter configuration as plaintiff's tractor in order to identify a specific design defect.  Having failed to do so, he cannot meet an essential element of a design defect claim.[4]  Defendant's motion for summary judgment is therefore GRANTED as to any claim of defective design.

B.   Manufacturing Defect

Unlike the design defect, a plaintiff claiming a manufacturing defect may proceed under what is sometimes referred to as a "non-specific" defect theory.  Mays, 233 Kan. at 50, 661 P.2d at 357. According to Mays, a plaintiff may prove a manufacturing defect by either direct or circumstantial evidence.[5]  Mays, 233 Kan. at 54, 661 P.2d at 360.

> For circumstantial evidence to make out a prima facie case, it must tend to negate other

---

[4] The only evidence is that the tractor's shift linkage mechanism was adjusted using adjustment features incorporated into the mechanism.  There is no evidence that the mechanic altered the adjustment mechanism by, for example, using unauthorized parts. Even if he did, this would not be a design defect.  Most pieces of machinery incorporate in their design provisions for adjustment. Few, if any, persons would assert that provisions for adjustment constitute a design defect, and no such claim is made in this case, even by Dr. Wells.

[5] In fact, Jenkins stated that a design defect could be proved by either direct or circumstantial evidence.  Jenkins, 256 Kan. at 634-35, 886 P.2d at 889.  Nonetheless, even circumstantial evidence must be used to establish a specific design defect.  Id. at 634, 886 P.2d at 889.

-9-

> reasonable causes, or there must be an expert opinion that the product was defective. Because liability in a products liability action cannot be based on mere speculation, guess or conjecture, the circumstances shown must justify an inference of probability as distinguished from mere possibility.

<u>Id.</u>

In this case, plaintiff cannot rely on expert testimony. At the <u>Daubert</u> hearing, his proposed expert, Ron Wells, disavowed any opinion that the tractor suffered from a manufacturing defect. Accordingly, plaintiff's evidence must "tend to negate other reasonable causes" and "justify an inference of probability" that a manufacturing defect existed. <u>Id.</u>

As previously noted, although no one points to any testimony by plaintiff that he placed the tractor in "Park" prior to dismounting, the arguments of all parties make it patently obvious that he will so testify. If the jury credits his testimony, the idea that the tractor could come out of "Park" and jump into a forward gear certainly gives rise to an inference that something was wrong with the tractor, and that this condition was unreasonably dangerous. Moreover, the court notes that one of the dealer's technicians ultimately opined that the incident may have occurred because a shift linkage was out of adjustment. (Doc. 56 exh. 4 at CW32.) Defendant chastises plaintiff for relying on this statement while rejecting a prior statement from the technician that there was nothing wrong with the tractor. (Doc. 57 at 6-7.) However, sorting out which of these two opinions is more accurate is for a jury. If believed, the technician's statement might actually amount to direct evidence of a manufacturing defect, thereby strengthening plaintiff's case.

In sum, the court finds that plaintiff has satisfied the burdens described in <u>Mays</u> for providing proof from which a jury could find that a manufacturing defect existed in the tractor and that this defect was unreasonably dangerous.

Turning to the final element of a prima facie case of strict products liability, plaintiff is required to prove that the product was in a defective condition when it left defendant's control. Defendant did not challenge plaintiff's evidence on this point. Nowhere in its briefs did defendant suggest that plaintiff lacked proof of this element. Pursuant to Federal Rule of Civil Procedure 56, it is the moving party's burden to show that it is entitled to judgment as a matter of law. Defendant focused its entire argument on plaintiff's inability to specify a defect in the product. Defendant has not shown that plaintiff lacks proof on this element, and plaintiff has not been placed on notice that his proof was in question. Accordingly, the court concludes that plaintiff has created a triable issue on his claim of manufacturing defect. Defendant's motion is therefore DENIED as to that claim.

A motion for reconsideration of this order pursuant to Local Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was

briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

    IT IS SO ORDERED.

    Dated this __11th__ day of October 2005, at Wichita, Kansas.

                                        s/   Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE