**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| WALTER F. DOWNEY, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  04-1359-MLB |
| | ) | |
| DEERE & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on motions in limine filed by both parties, along with defendant's objections to plaintiff's exhibit list.  (Docs. 71, 72, 74.)  The parties filed responses to the in limine motions.  (Docs. 76, 78.)  The court resolves some matters and leaves others until trial, as further described herein.

**I.   FACTS AND PROCEDURAL HISTORY**

Plaintiff owns a John Deere Model 7810 tractor manufactured by defendant.  Plaintiff purchased the tractor in December of 1999. Some two years later, in December of 2001, he was operating the tractor to load round bales of hay onto a truck.  At some point, he placed the tractor in "Park" and exited the cab of the machine to check his load.[1]  While dismounting, plaintiff claims the

---

[1] Neither party has pointed to any evidence which establishes that plaintiff placed the tractor in "Park" prior to exiting the cab.  In his state court petition, plaintiff merely alleged that, "On exiting the cab of the tractor, the tractor suddenly slipped into gear, throwing Mr. Downey to the ground."  (Doc. 1 exh. 1 at 2 ¶ 7.)  This leaves some doubt as to whether plaintiff placed the tractor in "Park," "Neutral," or some other configuration. Nonetheless, the parties and their experts all focus their commentary and analysis around the issue of whether the tractor

tractor slipped out of "Park" and into a forward gear, throwing him to the ground and causing him serious injuries. (Docs. 1 exh. 1; 13 at 1; 14 at 2.)

Following the accident, plaintiff contacted the dealership from which be originally bought the tractor and asked the dealer to investigate the cause of the accident. (Doc. 56 exh. 5 at 1.) The dealer's repair personnel consulted with defendant's technicians, but after examining the machine in late December of 2001 and early January of 2002, claimed to have found no evidence of any deficiency that could have led to the accident. Id. exh. 4 at CW33. The parties do not address whether plaintiff regained possession of the tractor after this initial inspection; however, a review of the repair notes suggests that is what happened. In particular, one note states that after this initial, unfruitful inspection, plaintiff reported another instance where the tractor jumped out of "Park" and lurched forward, after which the dealership reinspected the machine. Id. As a result of this second inspection, the dealer's repairman apparently changed his conclusion, finding instead that the incident may have occurred because a shift linkage was out of adjustment. Id. exh. 4 at CW32.

Consequently, plaintiff brought the present products liability action in Kansas state court, alleging that defendant and the local tractor dealer from whom the machine was purchased were liable

---

could slip out of "Park" and into a forward gear. (See, e.g., Doc. 13 at 1.) Accordingly, the court gives plaintiff the benefit of the doubt and assumes that plaintiff's theory relies on evidence (probably his own testimony) that he placed the tractor in "Park" prior to dismounting.

-2-

based on a defect in the machine. The case proceeded toward trial in the state court, and was scheduled for a jury trial to start on January 11, 2005. On November 10, 2004, the state court dismissed the local tractor dealer from the action, creating for the first time complete diversity of citizenship. Pursuant to 28 U.S.C. sections 1441 and 1446(b), defendant removed the case to this court on November 17, 2004. (Docs. 1 exh. 1; 51 at 2-4; 54 at 4.)

In a prior order, the court granted partial summary judgment to defendant, concluding that plaintiff had failed to create a triable fact on a design defect claim. Nevertheless, plaintiff was permitted to proceed on his theory that the tractor suffered from a non-specific manufacturing defect. (Doc. 61.) In another setback for plaintiff, the court excluded his expert witness, Ron Wells, on the grounds that Wells was not qualified to act as an expert in this case, and that his methods were both unreliable and unhelpful to a jury. (Doc. 60.) With trial imminent, the parties now ask the court to resolve various evidentiary issues.

**II. ANALYSIS**

A. Plaintiff's Motion in Limine

Plaintiff asks the court for an order excluding all evidence, argument, or commentary about the fact that plaintiff filed for bankruptcy. (Doc. 74.) Plaintiff argues that Tenth Circuit law and Kansas law categorically preclude the introduction of evidence regarding a party's financial condition, absent a few carefully circumscribed exceptions that are not relevant here. Id. at 2-3. Defendant counters that such evidence is admissible to show a motive to fabricate a claim. (Doc. 78 at 5.)

-3-

Defendant's theory of the case is precisely that - plaintiff concocted this accident as a way out of his financial woes, which included hundreds of thousands of dollars of debt and bankruptcy. Id. at 6-7. In support of that theory, defendant proffers a timeline showing that plaintiff failed to seek medical treatment or otherwise mention his alleged injuries until some three months after he claims the accident occurred. Id. at 1-4. During that same time period, John Deere Credit was in the midst of collection actions against plaintiff because he was in default on some large loans, including a loan on the tractor that is at the center of this action.[2] Id. at 2. The delinquency reached the point that plaintiff was given deadlines by which he must make a payment or surrender the tractor. Id. at 3. Ultimately, John Deere Credit filed a replevin action in state court to foreclose its interest in the tractor. Id. at 4.

> As a general rule, it is error to admit evidence of a party's financial condition unless necessary to determine the damages sustained. Blankenship v. Rowntree, 219 F.2d 597, 598 (10th Cir. 1955). To admit financial condition evidence, the damages to be determined must be punitive in nature. Id.; Smith v. United States Gypsum Co., 612 P.2d 251, 255 (Okl. 1980); 22 Am.Jur.2d Damages § 322 (1965). Additionally, this inadmissible evidence includes that of the poverty of a party. 22 Am.Jur.2d Damages § 319 (1965).

Whiteley v. OKC Corp., 719 F.2d 1051, 1055 (10th Cir. 1983).

---

[2] John Deere Credit is not a party to this action. Although the parties may have explained the relationship between defendant and John Deere Credit in a separate filing, no such explanation exists in the present motions and briefs. This fact is not relevant to the present decision, and the court merely assumes that John Deere Credit is a separate organization that is probably affiliated in some way with defendant.

Nevertheless, this general rule is subject to exceptions. In criminal cases, evidence of a defendant's financial condition is routinely admitted to show motive. See, e.g., United States v. Wainright, 351 F.3d 816, 821 (8th Cir. 2003); United States v. Williams, 264 F.3d 561, 575 (5th Cir. 2001); United States v. Logan, 250 F.3d 350, 369 (6th Cir. 2001); United States v. O'Brien, 119 F.3d 523, 530 (7th Cir. 1997); United States v. Utter, 97 F.3d 509, 515 (11th Cir. 1996). This exception is also commonly recognized in civil arson cases, where the defendant insurance company asserts a defense of arson to the insured's claim for property damage coverage as a result of fire. See, e.g., Arms v. State Farm Fire & Cas. Co., 731 F.2d 1245, 1249 (6th Cir. 1984); Powell v. Merrimack Mut. Fire Ins. Co., 667 F.2d 26, 28-29 (11th Cir. 1982); Elgi Holding, Inc. v. Ins. Co. of N. Am., 511 F.2d 957, 959 (2d Cir. 1975); Boone v. Royal Indem. Co., 460 F.2d 26, 27-28 (10th Cir. 1972); Wagschal v. Sea Ins. Co., Ltd., 861 F. Supp. 263, 266 (S.D.N.Y. 1994). While not as common in other settings, financial information has also been admitted in other tort cases to demonstrate a party's motive to engage in unlawful or inappropriate conduct. See, e.g., In re Joint E. & S. Dists. Asbestos Litig., 798 F. Supp. 925, 934 (E.D.N.Y.), rev'd on other grounds, 995 F.2d 343 (1993) (in products liability case, defendant's financial condition showed motive to suppress information on product dangers).

Based on defendant's theory that plaintiff had a financial motive to fabricate this claim, which is bolstered by the proffered timeline showing a substantial delay between the alleged date of

the accident and plaintiff's seeking treatment or otherwise even mentioning that it occurred, the court finds that this case is similar to the civil arson cases noted above.  Although this is not an insurance case, products liability is, in essence, judicially imposed insurance in that manufacturers can be held liable for defects in their products.  Like the arson cases, plaintiff is asking defendant to pay his damages resulting from an untoward event, and defendant counters that, due to plaintiff's poor financial condition, plaintiff either fabricated the event or caused it in order to obtain relief from his abysmal economic state.  If defendant is successful in convincing the jury of this theory, then defendant will not be liable.

Viewed in the foregoing light, evidence of plaintiff's financial condition, including his bankruptcy proceedings is highly relevant to a fair determination of his credibility and motive for fabrication.  Although Federal Rule of Evidence 401 states that relevant evidence is admissible, Rule 403 still operates as a bar to evidence whose "probative value is substantially outweighed" by dangers of unfair prejudice or jury confusion.  The court finds that evidence of plaintiff's financial condition will not unfairly prejudice him or confuse the jury.  While debt, poverty, and bankruptcy are not things to be proud of, they are just as likely to invoke jurors' sympathy as to inflame their passion.  If anything, these facts might portray plaintiff as a poor, down-on-his-luck farmer who just cannot get a break in life, as contrasted with defendant, a rich equipment manufacturer.  But the court finds that the jury is mostly likely to follow the court's instructions,

-6-

and consider this evidence only for the proper purpose of determining whether plaintiff had a financial motive to fabricate this claim. To that end, the parties are directed to submit proposed limiting instructions on this issue. In all other respects, plaintiff's motion is denied.

    B. Defendant's Motion in Limine and Objections to Plaintiff's Exhibit List

The court takes up these two matters together because they are largely duplicative of each other. Defendant first seeks an order excluding evidence of other incidents in which a Model 7810 tractor had problems related to its shifting mechanism. Defendant notes a significant distinction between plaintiff's claim and all the other incidents that are the subject of this motion: plaintiff is the only person to <u>ever</u> claim that a Model 7810 jumped out of "Park" and into a forward gear. (Doc. 73 at 2-3.) All the other claims that plaintiff wants to introduce as similar incidents simply involved the tractor coming out of "Park" and into neutral, or other irrelevant failures. <u>Id.</u> at 3, app. A.

> Both federal and Kansas law permit the introduction of substantially similar accidents in strict products liability actions to demonstrate "notice, the existence of a defect, or to refute testimony given by a defense witness that a given product was designed without safety hazards." <u>Ponder v. Warren Tool Corp.</u>, 834 F.2d 1553, 1560 (10th Cir. 1987). Before introducing such evidence, the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident involved in the present case. <u>Rexrode v. American Laundry Press Co.</u>, 674 F.2d 826, 829 n.9 (10th Cir.), <u>cert. denied</u>, 459 U.S. 862, 103 S. Ct. 137, 74 L. Ed. 2d 117 (1982); <u>Julander v. Ford Motor Co.</u>, 488 F.2d 839, 846-47 (10th

-7-

  Cir. 1973).

Wheeler v. John Deere Co., 862 F.2d 1404, 1407 (10th Cir. 1988). The degree of similarity required depends upon the purpose for which the evidence is offered. Id. Similarity requirements are highest when the other incidents are offered to show proof of a dangerous condition, whereas less similarity is required to show notice or awareness of the potential defect. Id. at 1408.

  As usual, plaintiff fails to disclose his purpose for seeking to introduce this evidence. (Doc. 76 at 2.) Nevertheless, as the proponent of the evidence, it is his burden to show similarity, and that includes identifying the intended use of the evidence so as to establish the relative degree of similarity required for admission. A strained reading of his brief suggests that he probably intends to show that defendant was aware of a problem with the shifting mechanism on the Model 7810 tractor. Id. at 2-3 ("In this case, [defendant] makes the outrageous claim that the plaintiff's tractor is the only one that has ever jumped out of park. The falsity of these statements is proved by the own records.")[3]

  The court finds that plaintiff has failed to meet his burden to show that the other incidents were substantially similar. The primary reason for this conclusion is that plaintiff has failed to prove that any of these other incidents involved powered movement.

---

[3] The court notes that this comment misstates defendant's argument. Defendant does not claim that Model 7810's never came out of "Park." Rather, defendant claims that it has no knowledge of Model 7810's ever jumping into a forward gear, as plaintiff alleges here.

-8-

The complexity of the Model 7810 three-lever shifting mechanism was explored in the briefs surrounding defendant's motion to exclude Ron Wells.  Having the tractor slip out of "Park" is one thing; but, having it slip out of "Park" and into a forward gear is something totally different.  Not one single person, expert or otherwise, has been able to explain how that could happen, nor has anyone been able to re-create such a phenomena.  Since the only evidence before the court is that these other incidents involved un-powered movement, they are not sufficiently similar to plaintiff's claimed incident.  Defendant's motion is granted on this point.

Defendant next seeks to exclude two letters written by a product claims manager, Steven Davis, to plaintiff. (Doc. 73 app. E.)  Plaintiff characterizes these letters as admissions of liability by a party-opponent, which are admissible under Rule 801(d)(2).  (Doc. 76 at 3.)  Defendant asserts that these are communications made during compromise negotiations, which would make them inadmissible under Rule 408.  (Doc. 73 at 7.)

A review of the letters shows that, contrary to plaintiff's assertions, defendant's representative never admitted liability nor gave any indication that defendant was going to pay for plaintiff's medical expenses.  Instead, the letter contained statements such as:

> [W]e believe it is very important to thoroughly examine the facts of this matter and to work with you to a proper conclusion in all aspects of our earlier phone discussion. We will work with you and also our dealer at Western Implement to establish the facts needed to make all further decisions on your claim.

-9-

(Doc. 73 app. E at 1.)  This shows defendant's intent to investigate the claim and to work toward a "proper conclusion" - i.e. settlement, if appropriate.  Continuing its effort to obtain information from plaintiff, the letter continues:

> I would also ask that you provide me the names and addresses of your health care providers that have treated you for the injury you sustained in this accident.  It will be our intent to review the medical records and of course secure your medical expenses in the evaluation of your claim.
> If you have income loss from this incident, please also write to me about what that loss may be and how you have established that loss.

Id.  In other words, defendant asked for medical proof of the injury, along with the amount of damages plaintiff was claiming for medical expenses and lost income.  This does not amount to an admission of liability or a promise to pay plaintiff's damages.  It is simply an effort to obtain information so that defendant can evaluate the claim and determine whether a settlement is appropriate and, if so, in what amount.  Indeed, Davis closed the second letter by saying, "When this office has completed the investigation, I assure you we'll be getting back to you <u>with the position of our client</u> and further discussions."  Id. at 3 (emphasis added).  The underlined phrase clearly indicated that defendant had not made a determination regarding what it would do, and certainly had not admitted liability or promised to pay anything.  The court finds that these letters should be excluded under Rule 408 as communications made in furtherance of compromise negotiations.  Moreover, in any event, they should be excluded

-10-

under Rule 403 due to the risk of misleading the jury. Whatever the letters could possibly represent, they are not admissions of liability, nor do they show that defendant misled plaintiff into thinking that defendant would pay all his claimed damages. Allowing plaintiff to use them for this improper purpose would be inappropriate under Rule 403.

Defendant makes a similar request to prevent plaintiff from testifying regarding conversations he had with Davis. After reviewing the cited portions of plaintiff's deposition, it is unclear exactly what statements Davis made, and in what context. Moreover, it is equally unclear whether plaintiff would testify about matters discussed in his deposition, or other matters. This portion of defendant's motion is denied without prejudice to reassertion at trial, where the full context and content of any such statements can be evaluated.

Turning to defendant's next request, plaintiff produced a brief video that he characterizes as demonstrative evidence. (Doc. 73 exh. F.) The video is a pseudo re-creation of the alleged accident. It begins with a few seconds of actual video showing plaintiff exiting the cab of his tractor while unloading hay bales. Then, plaintiff is replaced by an animated figure, after which the tractor is showing jumping into forward gear and throwing him to the ground. Thereafter, all actual video ceases, and the viewer is presented with a fully animated scene entitled "Kinematic Analysis." Plaintiff is displayed in the form of a skinless, musculo-skeletal figure, and the accident is replayed several times in slow motion with text inserted to highlight plaintiff's right

shoulder and neck impacting the ground.  The entire video is only 53 seconds long.

The court will reserve ruling on this matter until trial. Plaintiff will have to authenticate the video.  Assuming he can do that, the court will hear argument as to its admissibility.

Finally, the court turns to the remaining issues raised in defendant's objections to plaintiff's exhibits.  (Doc. 71.) Defendant makes a general objection to the admission of any exhibits not properly disclosed during discovery.  Id. at 1. However, defendant fails to specify what exhibits those might be. The objection is overruled without prejudice to reassertion at trial as to specific exhibits.

Defendant also objects to plaintiff's broad intent to introduce "all deposition exhibits."  Id. at 3.  Most of defendant's complaints related to exhibits used in the deposition of plaintiff's excluded expert, Ron Wells.  The court reserves ruling on this matter until trial.  If any of these exhibits can be properly authenticated and are otherwise admissible, the court sees no reason to exclude them simply because Wells has been excluded.

As a final matter, the parties are directed to provide the court with proposed jury instructions and voir dire questions by Monday, March 6, 2006.

IT IS SO ORDERED.

Dated this __3rd__ day of March 2006, at Wichita, Kansas.

s/ Monti Belot

-12-

```
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE
```